IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DOROTHY COLEMAN, Administrator of the Estate of Johnnie Russell III, Deceased,<br><br>Plaintiff,<br><br>vs.<br><br>JEFFREY WIENCEK, THE CITY OF AURORA, ILLINOIS, and PROVENA HOSPITALS d/b/a Provena Medical Center,<br><br>Defendants. | Case No. 08 C 5275 |

### MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Dorothy Coleman, the administrator of the estate of her late brother Johnnie Russell, has sued the City of Aurora, Aurora police officer Jeffrey Wiencek, and Provena Hospitals. Russell was admitted to the emergency department of Provena Mercy Medical Center in Aurora on November 17, 2006. Coleman alleges that he suffered from Dilantin toxicity, altered mental stability, paranoid personality, and other conditions. Compl. ¶ 17. Provena personnel evaluated him and recommended him for placement in the psychiatric ward. Id. ¶ 18. At some point, a nurse discovered that Russell was in possession of a handgun, and the Aurora police were called. Id. ¶¶ 20-21. When the police arrived, Russell had blockaded himself inside a hospital room. Id. ¶ 21. A standoff ensued. Coleman alleges that without legal justification, Wiencek fired five or six shots at Russell, killing him.

Coleman has sued Wiencek and Aurora for use of excessive force and related

claims.  Coleman has also asserted a wrongful death claim against Provena.  She alleges that Provena owed a duty "to exercise reasonable care to protect . . . Russell from causing harm to himself and others."  *Id.* ¶ 59.  Coleman alleges that Provena was negligent "in that, with knowledge of [Russell's] mentally defective condition and prior psychiatric history, [it] failed to conduct a reasonable search to determine whether [he] was in possession of any articles and items or contraband which may cause harm to himself and others," and that as a result, Russell suffered a wrongful death.  *Id.* ¶¶ 60-61.

**1.     Provena's summary judgment motion**

Provena has moved for summary judgment.  It makes a single argument in support of the motion.  Specifically, Provena argues that under Illinois law, "expert testimony is required to prove deviations from the standard of care in a medical malpractice action" and that Coleman "failed to disclose any expert testimony relating to the standard of care in support of [her] complaint."  Provena Mot. for Summ. Judg. at 1-2; Provena Mem. at 4-5.  Provena makes a related argument that Coleman offered no expert testimony relating to causation.  Provena Mem. at 5.  Coleman argues that her claim is one of simple negligence, not medical malpractice, and that expert testimony is thus not required.

> The Illinois Supreme Court has stated that
>
> [i]n a negligence medical malpractice case, the burden is on the plaintiff to prove the following elements of a cause of action:  the proper standard of care against which the defendant physician's conduct is measured; an unskilled or negligent failure to comply with the applicable standard; and a resulting injury proximately caused by the physician's want of skill or care.  Unless the physician's negligence is so grossly apparent or the treatment so common as to be within the everyday knowledge of a layperson, expert

medical testimony is required to establish the standard of care and the defendant physician's deviation from that standard.

*Purtill v. Hess*, 111 Ill. 2d 229, 241-42, 489 N.E.2d 867, 872 (1986) (citations omitted).

Coleman's claim is not a claim of "medical malpractice" as such. The requirement of expert testimony to establish the standard of care and deviation from the standard is not, however, limited to medical malpractice cases. The Illinois Supreme Court explained this in *Jones v. Chicago HMO Ltd. of Ill.*, 191 Ill. 2d 278, 730 N.E.2d 1119 (2000). Though *Jones* itself was a medical malpractice action, the court explained the difference between ordinary negligence actions and those involving professional negligence.

The court in *Jones* described the requirements for an ordinary negligence claim as follows:

> The elements of a negligence cause of action are a duty owed by the defendant to the plaintiff, a breach of that duty, and an injury proximately caused by the breach. The standard of care, also known as the standard of conduct, falls within the duty element. . . .
>
> In an ordinary negligence case, the standard of care required of a defendant is to act as would an "ordinarily careful person" or a "reasonably prudent person." No expert testimony is required in a case of ordinary negligence.

*Id.* at 294-95, 730 N.E.2d at 1129-30 (internal quotation marks and citations omitted).

The court in *Jones* described the requirements for a professional negligence claim as follows:

> In contrast, in a professional negligence case, the standard of care required of a defendant is to act as would an ordinarily careful professional. Pursuant to this standard of care, professionals are expected to use the same degree of knowledge, skill and ability as an ordinarily careful professional would exercise under similar circumstances.

> Expert testimony is usually required in a case of professional negligence. Expert testimony is necessary to establish both (1) the standard of care expected of the professional and (2) the professional's deviation from the standard. The rationale for requiring expert testimony is that a lay juror is not skilled in the profession and thus is not equipped to determine what constitutes reasonable care in professional conduct without the help of expert testimony. In Illinois, a professional standard of care has been applied in cases involving a variety of both medical and nonmedical professions, such as law and dentistry.

*Id.* at 295-96, 730 N.E.2d at 1130 (internal quotation marks and citations omitted).

In short, if Coleman's claim is an ordinary negligence claim, no expert testimony is required. If it is a "professional negligence" claim, expert testimony may be required (though there are limited exceptions to the general rule requiring expert testimony in such cases, *see, e.g., id.* at 296, 730 N.E.2d at 1130).

Provena points out that medical professionals were involved in dealing with Russell before the events surrounding his death. The fact that medical professionals may have been involved in the events leading up to an injury, however, does not automatically make a claim arising from that injury a professional negligence claim.

In *Heastie v. Roberts*, 226 Ill. 2d 515, 877 N.E.2d 1064 (2007), the plaintiff sued to recover damages for injuries he experienced in a fire that took place while he was involuntarily restrained on a cart while awaiting treatment in a hospital emergency room after he was taken there upon being found intoxicated and lying in a residential driveway. When the plaintiff arrived at the hospital, medical personnel assessed him and determined that he did not require immediate medical treatment but that he was highly intoxicated, disoriented, and incapable of making rational decisions. He was also combative. *Id.* at 520-21, 877 N.E.2d at 1069-70.

The emergency room's "charge nurse" believed the plaintiff was in immediate

danger of harming himself or others and thus, in accordance with the hospital's restraint and seclusion policy, determined to restrain him on a cart and move him to an area away from other patients. He was restrained on a cart with the assistance of several personnel and moved to a room that was partitioned off from other parts of the emergency room. This was not the room usually used to sequester patients, and it did not have a smoke detector. *Id.* at 521-22, 877 N.E.2d at 1070. After the plaintiff had been in the room for some time, a heat alarm went off, and hospital personnel discovered that both the room and the plaintiff were on fire. He suffered severe injuries. The cause of the fire was not definitively determined, but laboratory analysis indicated the presence of an accelerant in the plaintiff's pants, and a disposable lighter was found on the floor of the room (though there was no evidence linking it to the plaintiff). *Id.* at 522-24, 877 N.E.2d at 1070-71.

The plaintiff filed suit, alleging that the defendants (the hospital and medical personnel) had been negligent for restraining him improperly, for failing to search him for contraband before restraining him, for not adequately monitoring him, and for not providing timely notice to a physician that he had been placed in restraints. The plaintiff also alleged that the hospital was negligent for not installing a smoke detector in the room where he was restrained and for failing to provide adequate training to personnel on the proper use of fire extinguishers. Finally, he asserted a *res ipsa loquitur* claim in which he alleged that fires ordinarily do not start in the rooms of restrained hospital patients unless the hospital or its personnel are negligent and that the room, the restraints, and the manner in which the plaintiff was searched were under the defendants' control. *Id.* at 524-25, 877 N.E.2d at 1072.

The Supreme Court's decision in *Heastie* dealt with a number of issues. When it reached the plaintiff's failure-to-search claim, however, the court concluded that it was a claim of ordinary negligence, not professional negligence. The court noted that

> the fact that . . . medical professionals were involved does not, in itself, mean that expert medical testimony was necessary to establish the standard of care. Not every injury sustained by a patient in a hospital results from healing-art malpractice. Hospitals also have administrative and managerial duties toward patients, a breach of which may subject them to liability.

*Id.* at 551, 877 N.E.2d at 1086 (citations omitted). The court concluded that though the determination of whether a patient should be restrained "involves the exercise of medical judgment," determination of whether he "should be searched for potentially dangerous contraband before being restrained and sequestered does not." *Id.* at 552-53, 877 N.E.2d at 1087 (citations omitted). The court stated that

> [p]rerestraint contraband searches are wholly unrelated to the diagnosis or treatment of a patient's condition. They serve no medical function of any kind. Their purpose is purely safety related, specifically, to insure that a patient who is going to be restrained and then left alone will not have access to implements which may be used to effect an escape, inflict harm on himself or others, or destroy property. Such a purpose bears on a hospital's administrative and management functions, not its delivery of medical care.

*Id.* at 553, 877 N.E.2d at 1087. In this regard, the hospital was required to "conform to the standard of 'reasonable conduct' in light of the apparent risk," not to a higher standard of *professionally* reasonable conduct. *Id.*

The court in *Heastie* laid down a general rule that the need for expert testimony in a given case depends on whether determining the applicable standard of care, whether there was a deviation from the standard, and whether this proximately caused

an injury "require[s] consideration of knowledge, skill, or training in a technical area outside the comprehension of a layperson." *Id.* at 554, 877 N.E.2d at 1088. Expert testimony on these topics is not required when a health care provider's conduct is so grossly negligent or the treatment is so common that a layperson can readily appraise it, "or where the act alleged to be negligent is not an implicit part of the medical procedure." *Id.* The plaintiff's failure-to-search claim, the court concluded, fell within the latter category.

The Court agrees with Coleman that her claim is a claim of ordinary negligence concerning the hospital's breach of an administrative duty, not a negligent act that is a part, even an implicit part, of a medical procedure.[1] Provena argues in its reply brief that the decision whether to search a patient "depends on the medical judgment of the mental status of the patient by a physician . . . ." Provena Reply at 7. Provena does not, however, support this contention with any properly-submitted evidence.[2] In any event, Coleman has made it clear that she does not contend that Provena misevaluated Russell's medical or mental condition or provided him with deficient medical care, which were it the case would mean the claim requires expert testimony.

There may be a fine line dividing ordinary negligence claims and professional

---

[1] Coleman does not contend that hers is the sort of professional negligence case in which expert testimony is not needed.

[2] With its reply brief, Provena submitted not only a response to plaintiff's statement of additional facts pursuant to Local Rule 56.1(a), but something called "Defendant Provena Hospital's Statement of Additional Facts." The Court strikes this submission, which is found at pages 4-5 of docket entry 77 and the attached exhibits. Local Rule 56.1 does not permit the party moving for summary judgment to submit "additional facts" with its reply brief, for the simple reason that the non-moving party has no further chance to reply at that point.

7

negligence claims in this context, but the Court is confident that it can preserve the distinction via careful instructions to the jury. The Court also notes that having survived summary judgment by arguing that her claim does not turn on deficiencies in medical evaluation or treatment, Coleman will be held to that characterization and will not be able to reverse course later.

For these reasons, the Court denies Provena's motion for summary judgment.

**2.     Provena's motion to extend time for Rule 26(a)(2) disclosures**

The Court set a pretrial schedule that, after some extensions, required fact discovery to be completed by October 30, 2009; required Coleman to make Rule 26(a)(2) disclosures by December 21, 2009; and required defendants to make Rule 26(a)(2) disclosures by January 29, 2010. Provena did not make any Rule 26(a)(2) disclosures. It filed its motion for summary judgment on January 29, 2010, the date its Rule 26(a)(2) disclosures were due. The Court directed Coleman to respond to the motion by February 24, 2010 and Provena to reply to Coleman's response by March 10, 2010.

On March 11, 2010, the day after it filed its reply brief, and approximately six weeks after the deadline to make its Rule 26(a)(2) disclosures had passed, Provena filed a motion to extend the time for making those disclosures. It noted that its motion for summary judgment depended on Coleman's failure to disclose experts on its claim against Provena. Provena stated that "[i]f unsuccessful in its motion for summary judgment, [it] requests that it be granted leave to disclose its own experts . . . ." Provena Mot. for Ext. of Time ¶ 4. In its motion, Provena says it plans to disclose three separate experts. *Id.*

The Court denies Provena's motion. It quite clearly made a strategic decision regarding how to characterize and defend against Coleman's claim. In addition, Provena let the deadline for making its Rule 26(a)(2) disclosures pass without suggesting that it wished to revisit that alternative if the Court denied its motion for summary judgment, and without asking the Court, in advance of the deadline, to defer it in light of the strategic decision it made. Provena is not entitled to force a belated extension of its deadline by choosing to characterize Coleman's claim in a particular way and then later, long after the deadline passed, insisting on a second bite at the apple if the Court disagrees.

The deadline for Provena to make Rule 26(a)(2) disclosures came and went without any hint that it wanted an exception. It is too late to ask for one now. The Court also notes that were it to grant the requested extension at this point, additional time would have to be tacked on for Coleman to depose Provena's experts and, possibly, to disclose rebuttal experts. That would result in unwarranted delay. The time to ask for a restructuring of the discovery schedule was before the deadlines had run, not after.

## Conclusion

For the reasons stated above, the Court denies defendant Provena Hospitals' motion for summary judgment [docket no. 64] and its motion for extension of time for Rule 26(a) disclosures [docket no. 78].

_____
MATTHEW F. KENNELLY
United States District Judge

Date: March 22, 2010